IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

BILLY WAYNE BOYD and
HEARDIA SEN BOYD,

           Plaintiffs,

v.                                          Case 2:11-cv-02616-STA-cgc

STATE FARM FIRE AND
CASUALTY COMPANY,

           Defendants.

**REPORT AND RECOMMENDATION ON DEFENDANT STATE FARM FIRE AND
CASUALTY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

      Before the Court is Defendant State Farm Fire and Casualty Company's ("State Farm") Motion for Partial Summary Judgment. (Docket Entry "D.E." #19). The instant motion was referred to the Magistrate Judge for Report and Recommendation. (D.E. #22). For the reasons set forth herein, the Magistrate Judge recommends that Defendant's Motion for Partial Summary Judgment be GRANTED.

**I. Background**

      This case arises from State Farm's denial of insurance coverage to Plaintiffs Billy Wayne Boyd ("Mr. Boyd") and Heardia Sen Boyd ("Mrs. Boyd") after a residential fire. On June 30, 2011, Plaintiffs filed a Complaint for Damages in the Circuit Court of Shelby County for the Thirtieth Judicial District at Memphis, Tennessee. Plaintiffs allege that they purchased a homeowner's insurance policy from State Farm to cover their residence, that they sustained fire loss at the

1

property, and that, while State Farm has paid some periodic advances, it has failed to fully pay the loss Plaintiffs incurred. Plaintiffs have plead claims of breach of contract, fraud and/or misrepresentation, and violations of the bad faith penalty statute and Tennessee Consumer Protection Act ("TCPA"). Plaintiffs seek compensatory, punitive, and treble damages.

On July 20, 2011, State Farm filed a Notice of Removal to this Court. On August 17, 2011, State Farm filed its Answer, which asserted that Plaintiffs violated the terms and conditions of the insurance policy by causing or procuring the loss, by intentionally concealing or misrepresenting material facts, and by not having an insurable interest in the property. On May 9, 2012, Defendants filed the instant Motion for Partial Summary Judgment. Defendants contend that Plaintiffs extra-contractual claims for bad faith, fraud and/or misrepresentation, TCPA violations, and punitive damages must be dismissed as a matter of law.

## II. Proposed Findings of Fact

State Farm issued Homeowners Policy 42-J1-0179-1 ("Policy") to Plaintiffs to insure real property located at 6843 Stone Gap Cove, Memphis, Tennessee, 38141 with effective dates from December 10, 2009 to December 10, 2010. (Mot. for Partial Summ. J., Exh. 4 ("Simpson Aff."), Exhibit A ("Policy"), at 1). On July 1, 2010, a residential fire occurred at the home, which was occupied by Plaintiffs and their family. (Simpson Aff. ¶4). Plaintiffs notified State Farm of the fire, and Jim Simpson ("Simpson"), a Claim Representative with State Farm, was assigned to work on Plaintiffs' claim. (Simpson Aff. ¶¶ 2, 3, 6).

State Farm provided various information to Plaintiffs explaining the loss process, providing the claim reporting forms, and assisting with obtaining temporary housing. (Simpson Aff. ¶ 7 & Exh. B). State Farm obtained a recorded statement from Plaintiffs on or about July 7, 2010.

2

(Simpson Aff. ¶ 9 & Exh. C). State Farm paid three advanced payments to Plaintiffs on the contents of the property: $2,000.00 on July 1, 2010; $2,500.00 in October, 2010; and,$2,500.00 in July, 2010. (Simpson Aff. ¶¶ 8, 10, 12). Additionally, State Farm paid $40,409.70 in additional living expenses for Plaintiffs from July 1, 2010 through April 30, 2011. (Simpson Aff. ¶ 11).

As part of the continuing investigation of the fire loss, State Farm hired EFI Global to conduct an origin and cause investigation of the fire. (Simpson Aff. ¶ 13). On August 6, 2010, State Farm received the Fire Investigation Report from EFI Global, which contained the opinion that the fire was "incendiary." (Simpson Aff. ¶ 14 & Mot. for Partial Summ. J., Exh. 1 ("EFI Report")). State Farm also received the Chemical Laboratory Report from EFI Global, which contained the opinion that the "debris samples from the fire scene contained ignitable liquids." (Simpson Aff. ¶ 15). Plaintiffs do not dispute that these reports were prepared and received but do dispute the contents and conclusions of both reports. (Pl.'s Resp. to Def.'s Stmt. of Undisputed Material Facts ¶¶ 16, 18).

Following the EFI Global investigation, State Farm requested that Plaintiffs submit to Sworn Statements, or Examinations Under Oath ("EUO"), which they did on September 1, 2010. (Simpson Aff. ¶ 16; Def.'s Mot. for Summ. J., Exhs. 5 & 6). Plaintiffs also submitted additional documents at State Farm's request, including tax returns from 2008 and 2009. (Simpson Aff. ¶ 23). Plaintiffs submitted Personal Property Inventory Forms claiming approximately $238,827.92 in personal property. (Simpson Aff. ¶ 24; Memo. in Support of Mot. for Partial Summ. J., Exhibit 2 "Property Inventory"). Plaintiffs never submitted a Sworn Statement of Proof of Loss to State Farm (Simpson Aff. ¶ 25); however, Plaintiffs respond that State Farm has not requested such a sworn statement and did not ask any questions about Plaintiffs' completed proof of loss forms in their September 1, 2010

Sworn Statements (Pl.'s Resp. to Def.'s Stmt. of Undisputed Material Facts ¶ 35).

As the investigation continued, State Farm also began to believe that Plaintiffs did not own the property at either the time of application for the Policy or at the time of the loss. (Simpson Aff. ¶ 17). State Farm relies upon property records that indicate that an individual named Wilson Roberts ("Roberts") owned the property both at the time of application for the Policy and at the time of the loss. (Simpson Aff. ¶ 18 & Collective Exhibit D). State Farm also believed that the property records indicated that, at the time of the fire, the property was scheduled for a foreclosure sale by InSouth Bank a few days later on July 9, 2010. (Simpson Aff. ¶ 19 & Collective Exhibit D).

In addition to the concerns regarding the property ownership, State Farm's investigation suggested that Plaintiffs may have had financial motive to cause or procure the fire. Mr. Boyd's roofing business had declined by approximately fifty percent during the economic downturn. (Def.'s Mot. for Summ. J., Exh. 5 ("B. Boyd EUO") at 23 & Exh. 6 ("H. Boyd EUO") at 21-22). As a result, Mr. Boyd decided to enter the home health care business to bring in additional income. (B. Boyd EUO at 23; H. Boyd EUO at 22). To do so, Plaintiffs took out a loan for approximately $40,000.00 to $50,000.00 to make payroll. (B. Boyd EUO at 17-18; H. Boyd EUO at 25). Plaintiffs owed approximately $10,000.00 in delinquent property taxes, an issue which had previously caused Mrs. Boyd to have to file bankruptcy in 2003. (B. Boyd EUO at 98-100). Plaintiffs personal bank account frequently had a negative balance, and overdrafting was not unusual. (B. Boyd EUO at 19-21). At the time of the fire, Plaintiffs had a balance of approximately $5,300.00 in their home-health-care business bank accounts, but this included money that they had set aside to pay Roberts on the house, which they had not been paying for about three months. (B. Boyd EUO at 90-92). While Mr. Boyd stated that they were not behind on any bills at the time of the fire (B. Boyd EUO

4

at 88), State Farm asserts that Plaintiffs had a past due balance on a cellular phone account for $383.04, with additional monthly charges of $415.32 for a total amount due of $798.36 (B. Boyd EUO at 30).

State Farm's investigation also suggested that Plaintiffs had opportunity to cause or procure the fire. Plaintiffs were the last to leave the property at approximately 7:00 a.m. on the date of the fire, and they left the windows and doors locked and the property "very secure." (B. Boyd EUO at 65-68; H. Boyd EUO at 51). Only the Boyd family had keys and door access codes to the property. (B. Boyd EUO at 67). Mr. Boyd did not go to his place of employment on that day, but instead claims he went to make repairs to a rental property he owns in Memphis, Tennessee. (B. Boyd EUO at 71; H. Boyd EUO at 54-55). Although Mr. Boyd's estimated his project of changing a lock would take only thirty minutes, he was still at the rental property at around 3:00 p.m. when he received notice of the fire. (B. Boyd EUO at 67, 72).

Ultimately, based upon their investigation and the EFI Global report concluding that the fire was incendiary, that ignitable liquids were collected from debris at the fire scene, and that other causes were ruled out, State Farm denied Plaintiffs' insurance claims. (Mot. for Summ. J, Exh. 1 ("EFI Report")). Plaintiffs were notified of the denial by formal letter on or about March 16, 2011. (Simpson Aff. ¶ 26 & Exh. E ("Denial Letter")).

Plaintiffs dispute State Farm's contention that they did not own the property at either the time of application for the Policy or at the time of the loss. (Pl.'s Resp. to Def.'s Stmt. of Undisputed Material Facts ¶¶ 24, 25, 27-31). Plaintiffs rely upon the Sworn Statement of Mrs. Boyd, in which she states that they had "gotten the property deeded" to them through a "regular real estate closing" at an unspecified time. (H. Boyd EUO at 28-30). However, Mrs. Boyd additionally states in the

5

Sworn Statement that she found out in "December or January" of an unspecified year that "Roberts had changed the property into his name."  (H. Boyd EUO at 28-30).

Plaintiff further states that the property records evidencing that Roberts owned the property at the time of application and fire loss and evidencing that the property was scheduled for foreclosure by InSouth Bank on July 9, 2010 "speak for themselves."  (Pl.'s Resp. to Def.'s Stmt. of Undisputed Material Facts ¶ 25).  Plaintiffs do not dispute that the records indicate that the property was scheduled for a foreclosure sale on July 8, 2010, but state that "this information existed outside of the Plaintiffs' knowledge, information, and belief."  (Pl.'s Resp. to Def.'s Stmt. of Undisputed Material Facts ¶ 27).  Specifically, Mrs. Boyd stated in her Sworn Statement that she knew that she had not been making any payments on the property to InSouth Bank, that she knew that Roberts had not been making payments for some time, and that she realized this meant no one was making payments.  (H. Boyd EUO at 40).  Mrs. Boyd stated that she did not receive or view a published foreclosure notice or receive any "threatening letter."  (H. Boyd EUO at 40, 44).  Mr. Boyd stated that he was not aware of any foreclosure but that, before the fire, he had not made payments to anyone for approximately three months.  (B. Boyd EUO at 46, 90).

## III. Legal Standard for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that

6

would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id*. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998). "Conclusory statements unadorned with specific facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

## IV. Proposed Conclusions of Law

### A. *Bad Faith*

First, State Farm argues that Plaintiffs' claim under the bad faith penalty statute, Tennessee Code Annotated Section 56-7-105, fails as a matter of law. Under Tennessee law, the bad faith penalty statute imposes additional liabilities on insurance companies if "the refusal to pay the loss was not in good faith" and "such failure to pay inflicted additional expense, loss, or injury." Tenn. Code Ann. § 56-7-105. A claim under the bad faith penalty statute requires as follows: "(1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand before filing suit . . . , and (4) the refusal to pay must not have been in good faith." *Palmer v. Nationwide Mutual Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986). Because this requirement is statutorily based, the requirements must be "strictly construed." *Walker v. Tennessee Farmer's Mut. Ins. Co.* 568 S.W.2d 103, 106 (Tenn. Ct. App. 1977) (citing *St. Paul Marine & Fire Ins. Co. v. Kilpatrick*, 129 Tenn. 55, 72 (1914)). The insured bears the burden of proof with regard to the four elements. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 378 (6th Cir. 2007) (internal citation omitted).

As this Court has previously recognized, Tennessee courts "have failed to define the exact nature of a 'formal demand' for the purposes of seeking the bad faith penalty." *Topmost Chem. & Paper Corp. v. Nationwide Insurance*, No. 01-2588V, 2002 WL 1477880, at *2 (W.D.Tenn. Apr. 23, 2002) (citing *Hampton v. Allstate Ins. Co.*, 48 F. Supp. 2d 739 (M.D.Tenn. 1999)). Courts have determined that is not necessary that the demand be written, and repeated oral demands may satisfy the statute; however, the demands must be specific enough so that "the insurance company is aware

8

or has notice from the insured of the insured's *intent to assert a bad faith claim*, if the disputed claim is not paid." *Topmost*, 2002 WL 1477880, at *8 (Apr. 23, 2002) (quoting *Hampton*, 48 F. Supp. 2d at 746) (emphasis added). The purpose of the formal demand is to "allow the insurance company an opportunity to investigate the insured's claim of loss, to give the insurance company notice of the insured's *intent to assert a bad faith claim* if the disputed claim is not paid and *to memorialize the fact that 60 days have expired* after the insured gave such notice before filing suit." *Topmost*, 2002 WL 1477880, at *8 (quoting *Hampton*, 48 F. Supp. 2d at 739) (emphasis added).

In the instant case, Plaintiffs summarily state that they "made *informal* demands for payment throughout the insurance claim report process, mentioning both a lawsuit and the Bad Faith Penalty." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 13, 14, 16-17) (emphasis added). Plaintiff's own characterization of the demands as "informal" rather than formal all but concede that no formal demand was made, despite their arguments that they complied with the statute. Yet even disregarding Plaintiff's insufficient characterization of their own demands, Plaintiffs have not provided any evidence of a formal demand, either written or oral, to oppose the motion. Plaintiffs have not cited any evidence of how they put the insurer on notice that they had an intent to assert a bad faith claim if the disputed claim was not paid. Their conclusory statements of such compliance are insufficient for purposes of summary judgment.

Further, in response to the allegation in State Farm's Statement of Undisputed Facts that no formal demand for the bad faith penalty was made, Plaintiffs merely state as follows: "Disputed to the extent that the Plaintiffs continued to try to 'work with' the Defendant in an effort to have this matter resolved. The Defendant, however, refuses and/ or fails to take any action to rectify this situation." (Pl.s' Resp. to Def.'s Statement of Undisputed Facts ¶ 59). Once again, this statement

9

is not evidence in support of their position but merely an unsubstantiated argument that does not even address the issue of whether a formal demand for the bad faith penalty was made.

Finally, Plaintiffs do not provide any evidence of when their self-characterized "informal demands" were made. Thus, even if the Court had evidence to support the formality of any demands, the Court does not have any evidence that the sixty-day waiting period was fulfilled. As already stated, both the formality of the demand and the sixty-day waiting period are statutory requirements that must be strictly construed. The record contains no evidence to oppose State Farm's argument that these elements were not met. Accordingly, the Court recommends that the District Court determine that Plaintiff's claim for additional liability under the bad faith penalty statute, Tennessee Code Annotated Section 56-7-105, must fail as a matter of law for failure to make a formal demand upon the insurer.

### B. *Fraud and Misrepresentation*

Next, State Farm asserts that Plaintiffs' Complaint failed to plead any conduct that would satisfy the elements for an action for fraud or misrepresentation. State Farm additionally asserts that Plaintiffs' Complaint failed to plead the claim of fraud with particularity as required by Rule 9 of the Federal Rules of Civil Procedure.

Initially, the Court notes that the sufficiency of the pleadings should be addressed under Rule 12 rather than Rule 56 of the Federal Rules of Civil Procedure. While the instant motion is styled as a Motion for Partial Summary Judgment pursuant to Rule 56, the Court recommends that the District Court consider the allegations pertaining to the sufficiency of the Complaint as a Motion to Dismiss pursuant to Rule 12, in conjunction with Rule 9 with respect to the allegations of fraud.

10

A Rule 12(b)(6) motion challenges a complaint for failure to state a claim upon which relief may be granted. This motion only tests whether the plaintiff has pleaded a cognizable claim. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Essentially, it allows the court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. *See, e.g., Nietzke v. Williams*, 490 U.S. 319, 326-27 (1989).

To determine whether a motion to dismiss should be granted, the court must examine the complaint. The complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief, Fed. R. Civ. P. 8(a)(2), and it must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). While a complaint need not present detailed factual allegations, to be cognizable it must provide more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1959 (2007); *see also Scheid*, 859 F.2d at 436-37. A complaint must have a factual foundation, and the mere possibility that a plaintiff might later establish some set of undisclosed facts to support recovery is insufficient to survive a 12(b)(6) challenge. *Twombly*, 127 S.Ct. at 1968.

In reviewing the complaint, the court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Nietzke*, 490 U.S. at 326-27; *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983). However, only well-pleaded facts must be taken as true, and the court need not accept legal conclusions or unwarranted factual inferences. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405-06 (6th Cir. 1998). When a complaint

does adequately state a claim, it may not be dismissed based on the court's assessment that the party will "fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly,* 127 S.Ct. at 1969.

In addition to Rule 12's pleading requirements, Rule 9(b) of the Federal Rules of Civil Procedure requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Sixth Circuit has read the Rule 9(b) requirement in a liberal manner, requiring a plaintiff to, at a minimum, "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Advocacy Org. for Patients and Providers*, 176 F.3d at 322 (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)).

Under Tennessee law, a claim for fraud requires the following: (1) an intentional misrepresentation of material fact; (2) knowledge of the representation's falsity; (3) an injury caused by reasonable reliance on the representation, and (4) the misrepresentation involves a past or existing fact. *Axline v. Kutner*, 863 S.W.2d 421, 423 (Tenn. Ct. App. 1993). Likewise, the "elements of intentional misrepresentation are based on the common law action for fraud and deceit." *Ogle v. Runion*, No. 03A01-9108-CV-307, 1992 WL 9438, at *2 (Tenn. Ct. App. Jan. 24, 1992). A claim for negligent misrepresentation requires as follows: (1) that the defendant was acting in the course of its business, profession, or employment, (2) that the defendant supplied false information for the guidance of others in its business transactions, (3) that the defendant failed to exercise reasonable care in obtaining or communicating the representation, and (4) that the plaintiff justifiably relied on the information. *Sears v. Gregory*, 146 S.W.3d 610, 621-22 (Tenn. Ct. App. 2004) (quoting *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991)).

Plaintiffs' Complaint states the following with respect to fraud and misrepresentation:

> 25. The Defendant and/or its employees, agents, representatives, or other individuals working on its behalf, engaged in fraud and/or misrepresentation when it falsely represented that it would provide fire and casualty coverage to the Plaintiffs in the event that their house and its contents burden down when in fact it did not.
>
> 26. The Defendant's actions were intentional, willful, malicious, and/or reckless and entitle the Plaintiffs to punitive damages. The Defendant knew of the foregoing falsehoods and made them recklessly with the intent to deceive the Plaintiffs and to induce them into entering into a fire and casualty policy.
>
> 27. Alternatively, the Defendant's actions were negligent in that the Defendant failed to exercise due care and should have reasonably foreseen that its herein-stated actions and/or omissions would harm or damage the Plaintiffs financially.
>
> 28. As a sole, direct, and proximate cause of the Defendant's actions and/or omissions the Plaintiffs have and continue to incur substantial damages.

Pl.'s Compl. ¶¶ 25-28.

Upon review, Plaintiffs' Complaint does not allege any misrepresentation of fact that occurred and, thus, falls far short of the necessary pleading with specificity as required for the claim of fraud. *See Advocacy Org. for Patients and Providers*, 176 F.3d at 322 (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (requiring allegations of time, place and content of alleged misrepresentation to comply with Rule 9). While Plaintiffs state that State Farm "falsely represented that it would provide fire and casualty coverage," there does not appear to actually be any dispute that State Farm in fact issued the Policy to Plaintiffs. Instead, what Plaintiffs claim was improper is the denial of coverage after the fire. Yet this determination is not based upon any misrepresentation of fact—it is based upon State Farm's construction of the Policy. Whether that interpretation was correct or erroneous, such allegations do not properly give rise to an action for fraud and/or misrepresentation under Tennessee law. Accordingly, the Magistrate Judge recommends to the District Court that Plaintiff's claims for fraud and misrepresentation by

13

dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

In the alternative, if the Magistrate Judge were to assess Plaintiffs' claims for fraud and misrepresentation under Rule 56, Plaintiffs have likewise failed to cite to any evidence in the record of such a misrepresentation giving rise to these claims. Again, Plaintiffs conclusorily argue that the denial of coverage under the policy itself gives rise to a claim for fraud and/or misrepresentation. For the reasons already discussed, these claims require evidence of a particular misrepresentation of fact, and Plaintiffs have presented none. Thus, the Magistrate Judge likewise recommends that Plaintiffs' claims for fraud and misrepresentation must fail as a matter of law under Rule 56.

*C. TCPA*

Next, State Farm contends that Plaintiffs' claim for violation of the TCPA, Tennessee Code Annotated Section 47-18-101, *et seq.*, must fail as a matter of law. State Farm argues that the mere denial of an insurance claim, absent any deceptive, misleading, or unfair act, does not violate the TCPA.

The Court again notes that Plaintiffs' arguments with respect to the TCPA claim attack the sufficiency of the pleading in the Complaint. While the instant motion is styled as a Motion for Partial Summary Judgment pursuant to Rule 56, the Court recommends that the District Court consider the allegations pertaining to the sufficiency of the Complaint as a Motion to Dismiss pursuant to Rule 12. The Court has already set forth the requirements under Rule 12 in Section III.B of this Order.

The stated purpose of the TCPA is to "protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state." Tenn. Code Ann. § 47-18-102(2). The Tennessee

14

Supreme Court has held that the "acts and practices of insurance companies" may fall within the purview of the catch-all provision of the TCPA, *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 925 (Tenn. 1998), which prohibits "[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person," Tenn. Code Ann. § 47-18-104(b)(27).

The Tennessee Supreme Court has not permitted TCPA claims for mere denials of insurance coverage unless there is evidence of an attempt to violate the policy, deceive the insureds about the terms of the policy, or otherwise act unfairly. *Myint*, 970 S.W.2d at 926. The Sixth Circuit has likewise held that the "'erroneous denial' of a claim" is not an "act of deception or unfairness" that would permit recovery under TCPA. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d at 378. Instead, a plaintiff must "explain how it was misled and deceived" by certain acts on the part of the insurer to pursue relief under TCPA. *Parkway Assoc., LLC. v. Harleysville Mut. Ins. Co.*, 129 Fed. Appx. 955, 960-61 (6th Cir. 2005).

Other courts have also expounded upon the pleading requirements for TCPA cases. In *Fulton Bellows, LLC v. Fed. Ins. Co.*, 662 F. Supp. 2d 976 (E.D.Tenn. 2009), the court dismissed the TCPA claim on the basis that the allegations of a denial of an insurance claim on their own do not give rise to a TCPA claim. The *Fulton Bellows* court reasoned as follows:

> Other state and federal court decisions have made clear that for the TCPA to apply to the denial of insurance claims, the insured must *allege* that the insurer violated the terms of the policy or acted unfairly in some other way. Further, a mere denial of an insurance claim, absent any deceptive, misleading, [or] unfair act does not violate the TCPA.

662 F. Supp. 2d at 997 (internal citations omitted) (emphasis added).

Plaintiffs' Complaint sets forth the following with respect to the TCPA violation:

30. The Defendant engaged in unfair and/or deceptive trade practices in violation of [Tennessee Code Annotated] Section 47-18-104 et seq. and related sections by

15

representing to Plaintiffs that they were insured by the Defendant against such fire damage as was sustained to their home and its contents, and then denying and/or refusing and/or failing to pay for such insurance coverage.

Pl.'s Compl. ¶ 30.

Upon review, Plaintiffs' Complaint alleges that a TCPA violation occurred based upon the denial of coverage. Plaintiffs do not allege how the denial was in violation of the terms of the policy or that any other deceptive, misleading, or unfair acts occurred. These allegations are not sufficient to plead a violation of TCPA under Tennessee law, as a mere denial of coverage—even if later found to be erroneous—does not give rise to a TCPA violation. Accordingly, the Court recommends to the District Court that Plaintiffs' TCPA claims be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

In the alternative, if the Magistrate Judge were to assess Plaintiffs' TCPA claims under Rule 56, Plaintiffs have likewise failed to cite to any evidence in the record of deceptive, misleading, or unfair acts. While Plaintiffs conclusorily allege that the denial of the insurance policy gives rise to a TCPA claim, this is incorrect under Tennessee law. Thus, the Magistrate Judge likewise recommends that Plaintiffs' claim for violation of the TCPA must fail as a matter of law under Rule 56.

### D. Punitive Damages

Finally, Plaintiffs' Complaint seeks punitive damages in the minimum amount of $1,000,000. Under Tennessee law, punitive damages are "only allowable in cases involving torts where the action involves fraud, malice, oppression, or gross negligence. These damages are not generally allowed in cases founded on a breach of contract." *Bland v. Smith*, 197 Tenn. 683, 687 (1955). The rare case where punitive damages may be awarded for breach of contract under Tennessee law occur

16

when the breach of contract "is coupled with a tort involving fraud, malice, gross negligence, or oppression." *Smith v. Nationwide Property & Cas. Ins. Co.*, 505 F.3d 401, 408 (6th Cir. 2007) (citing *Medley v. A.W. Chesterton Co.*, 912 S.W.2d 748, 753 (Tenn. Ct. App. 1995)).

In the instant case, the Court has recommended that all of Plaintiffs' claims except the claim for breach of contract be dismissed either for failure to state a claim upon which relief may be granted under Rule 12(b)(6) or as a matter of law under Rule 56. As the Magistrate Judge recommendation would result in Plaintiffs' sole remaining claim being for breach of contract, and as punitive damages are not available solely for breach of contract, the Magistrate Judge recommends to the District Court that Plaintiffs' claim for punitive damages must fail as a matter of law.

## V. Conclusion

For the reasons set forth herein, the Magistrate Judge recommends to the District Court that State Farms' Motion for Partial Summary Judgment (D.E. #19) be GRANTED.

**DATED** this 8th day of November, 2012.

                              s/ Charmiane G. Claxton
                              CHARMIANE G. CLAXTON
                              UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**